### STATE, ELIAS B. WATROUS ET AL., PROSECUTORS, v. THE CITY OF ELIZABETH.

1. When the charter of a city professes to grant power to pave streets, and to make contracts, borrow money and levy taxes therefor, and also directs that the paving shall be done at the expense of the owners of the land along the line of the street, and that the whole cost shall, be assessed upon such land, the unconstitutionality of this direction does not invalidate the grant.

2. By its charter passed in 1863, (*Pamph. L., p.* 109,) the supplement of 1873, (*Pamph. L., p.* 778,) and that of 1875, (*Pamph. L., p.* 637,) the city of Elizabeth obtained power to levy an assessment on lands benefited for the expense of paving streets; and under the supplement of 1870, (*Pamph. L., p.* 754,) it acquired the right to levy a second assessment, on the first being vacated for illegality.

3. The supplement of 1873, (*Pamph. L., p.* 778,) substitutes a new method of levying assessments instead of that prescribed in the charter of 1863, (*Pamph. L., p.* 109,) and therefore, by implication, repeals the earlier act, *pro tanto.*

On *certiorari.*

Argued at February Term, 1878, before Justices VAN SYCKEL, DIXON and REED.

For the prosecutors, *W. J. Magie* and *G. P. Smith.*

For the defendants, *R. E. Chetwood.*

The opinion of the court was delivered by

DIXON, J.   This *certiorari* brings up an assessment for

paving Rahway avenue between Cherry street and the city limits.

The first reason relied on for setting the same aside is, that the provisions of the city charter, under which the authorities assumed to pave the street and assess a portion of the cost on the prosecutors, are unconstitutional and void. The argument presented is that the charter, approved March 4th, 1863, (*Pamph. L., p.* 109,) in terms authorized the city to pave streets at the expense of the owners of land on the line of the streets, and required the whole cost to be assessed on such land, and as these provisions for paying the expense are unconstitutional, (*Bogert* v. *City of Elizabeth*, 12 *C. E. Green* 568,) the whole provision is of like character, (*State, Chamberlain, pros.,* v. *Hoboken*, 9 *Vroom* 111,) and gave no power whatever to the city.

It does not, however, seem to me that this conclusion is sound. At the time of the adoption of this charter, it was not the commonly received opinion, even as expressed by our courts, that the legislature could not direct just such an assessment as is here prescribed, (*State* v. *Council of Elizabeth*, 1 *Vroom* 365 ; *S. C.*, 2 *Vroom* 547,) and hence it is reasonable to assume that all parties, the corporation, the contractor and the land owners, acted on the idea that the grant of power was valid. That idea would not establish the validity of the grant, but it demonstrates the danger of injustice in deciding against the power, and would intensify that caution with which courts always proceed when asked to adjudge that a legislative enactment is in violation of the fundamental law. In this case it is not claimed that the legislature could not grant the power to pave without also providing a constitutional mode for assessing the expense ; but the prosecutors insist that, in this law, the authority to make the improvement is so interwoven with this method of raising the funds, that, the latter failing, the former also must fall. The authority is not declared to be thus dependent by the express terms of the act, nor is it, I think, by any necessary implication. The leading purpose in the mind of the law makers was, doubtless, the execution of local improvements ; to this, the power of assessment was

but incidental; it was the means of reimbursing the corporation, after the improvement was completed. Though every provision of the charter as to assessments be obliterated, there still remains constitutional power enough for carrying on such public works. The defendant is a duly organized municipality, authorized to make contracts, binding on itself, for paving streets, (*Charter*, §§ 92, 123); to borrow money for such purposes, (§ 35); and to levy taxes therefor, (§ 64, ¶¶ XI., XIII.)

In these important respects, it differs from those bodies which in *State, Gaines, pros.,* v. *Hudson Co. Av. Com'rs*, 8 *Vroom* 12, and *State, McClosky, pros.,* v. *Chamberlain*, 8 *Vroom* 388, were restrained from exercising asserted power for want of constitutional means to meet the expense thereof. I am, therefore, of opinion that the charter granted to the city a power to pave streets independent of the authority to assess, and free from taint through its unconstitutionality. This power having been exercised, and in a way to confer special benefit on land owners at public expense, the court should sustain every proper attempt to exact from those owners a tax proportioned to such benefit.

It remains to consider, under this reason, whether any such tax has been authorized.

A supplement to the charter, approved April 4th, 1873, (*Pamph. L., p.* 778,) directs the appointment of commissioners of assessment, who are to make all assessments for the costs and expenses of all public improvements thereafter to be made, as well as such other assessments for work then already done as the city council should refer to them. The paving of Rahway avenue was at that time in progress, and I think it is embraced within a fair construction of these clauses, notwithstanding some doubt as to the applicability to such a case, of the procedure pointed out by this supplement. The doubt springs from the fact that the act seems to require the " proportionate assessment " to be made forthwith on the passage of the ordinance for the improvement. This difficulty is, however, removed by the supplement of April 9th, 1875, (*Pamph. L., p.* 637,) which enacts that a new board of com-

missioners of assessment shall be appointed, who are to per-form the duties and act in all respects as required by the supplement of 1873 ; that all assessments required to be made for the cost and expenses of paving, &c., where such assessments have not yet been ratified, shall be made by said board in the manner required by the act of 1873, except that the validity of such assessments shall not be questioned by reason of their report and estimate not having been made at the time required by the last mentioned act, but the said board, upon the city council directing them to make an assessment for such improvement, shall proceed in the manner required by said act, the same as if the ordinance for the improvement had been passed immediately prior to the time of such direction. At the date of this supplement of 1875, no assessment for this improvement had yet been ratified. Hence it came within the act. Thereafter an assessment was made, which this court, at November Term, 1876, (*State, Woodruff, pros.,* v. *City of Elizabeth,* 10 *Vroom* 55,) set aside for want of due notice to the land owners.

By section thirteen of a supplement approved March 17th, 1870, (*Pamph. L., p.* 754,) it is provided that whenever, by reason of any illegality, &c., any assessment shall be set aside, the council may re-institute the proceedings on the same basis on which the original proceedings were based, or otherwise, and lawfully proceed thereon the same as though the former proceedings had not been had ; and accordingly the council, on February 20th, 1877, directed the commissioners of assessment to make and report a new assessment. This would justify a re-assessment, provided a constitutional principle of assessment had been prescribed. Such a principle is laid down, both in the supplement of 1873 referred to, and in the general law respecting assessments in cities, approved April 21st, 1876. *Pamph. L., p.* 296.

Hence I conclude that the legislation upon which the present improvement and assessment rest is valid and sufficient, and that the first reason is without foundation.

Another reason assigned is that the ratification of the assess-

ment, without affording the prosecutors a hearing before the city council, or a committee thereof, was in contravention of the charter.

This reason is based upon the assumption that section one hundred and seven of the charter of 1863, requiring notice to be given of a hearing before a committee of council as to certain assessments, and which was passed upon in *State, Kellogg, pros.,* v. *Elizabeth,* 8 *Vroom* 353, applies to this case. But I think this is an error. That section embraces only such certificates of assessment as are made under designated sections of the act of 1863, and hence does not reach this assessment. Moreover, so fully does the supplement of 1873 direct the proceedings for levying and confirming assessments, that, in my judgment, it should be taken as substituting its method for that prescribed in the earlier act, and therefore as so far repealing it by implication. *Rex* v. *Cator,* 4 *Burr.* 2026 ; *Murdock* v. *City of Memphis,* 20 *Wall.* 590, (616.)

The other reasons alleged are, in effect, that the assessment greatly exceeds the actual benefits to the lands of the prosecutors.

This fact seems to me to be made out by that degree of proof necessary to overcome the report of the commissioners. The improvement was the laying of a Telford pavement. The contract was made February, 1872, for prices which, at the estimated quantities, would amount in the whole to $47,980. The exact time for the completion of the work does not appear, but it advanced so slowly that the contractor was obliged to ask for and received an extension, and his final estimate was not made up until July 1st, 1874 ; and as seventy five per cent. of the price was paid as the work progressed, a large accumulation of interest was thus occasioned without corresponding benefit to property owners by enjoyment of the completed roadway. The amount paid the contractor was $57,830. The total cost and expenses, including interest to time of assessment, are said to be $74,869, of which $74,150 were assessed on the lands benefited. The evidence, which is largely in the shape of reports of commit-

tees of the council to whom complaints were referred for investigation, shows that the work was very imperfectly done—by no means as the contract required. It is not alleged that the contract prices were inadequate. In view of these facts, it is plain that the amount assessed greatly exceeds the fair cost of the work done, and this lends much force to the opinions of the witnesses that it also exceeds the benefits received.

For this reason, the assessment against the prosecutors should be set aside, with costs.