HILLSIDE LAND COMPANY, A CORPORATION, ET AL., PROSECUTORS, v. TOWNSHIP OF NORTH BERGEN, IN THE COUNTY OF HUDSON AND STATE OF NEW JERSEY, RESPONDENT.

Submitted January 26, 1934—Decided May 7, 1934.

Before Justices CASE, BODINE and DONGES.

For the prosecutors, *Dougal Herr*.

For the respondent, *Nicholas S. Schloeder*.

The opinion of the court was delivered by

CASE, J.   Hillside Land Company caused the writ of *certiorari* to issue to review the assessments levied against its lands for benefits accruing from certain public improvements in the township of North Bergen.   Approximately eighty other landowners were subsequently added by rule as prosecutors.   The individual prosecutors are not separately considered.   Their claims are treated in bulk.

The work, which really constituted a single major improvement, was done under four authorizing ordinances.   The first, and by far the most comprehensive, was adopted July 7th, 1921, and provided for the paving of Grand avenue between the Paterson Plank road and Hoboken street.   It included street widening, curbs, sidewalks and sewer and utility connections.   It also included a sewer, with appurtenances, that was to be carried through an additional block of Grand avenue that lay between Hoboken street and Paterson avenue. The three succeeding ordinances all relate to work on the last named block; that of January 8th, 1925, provided for widening, that of October 22d, 1925, for establishing street grades and that of November 24th, 1925, for filling to conform to the grades so established.   The work under the first ordinance was finished December 22d, 1925, and the entire improvement was completed November 27th, 1926.

The total cost, $321,969.53, was certified by the department of public works to the board of assessors of December 23d, 1931.   The board of assessors thereupon functioned; and on October 5th, 1932, their assessment report was confirmed.   $136,103.23 was assessed specially against the properties benefited and $185,886.30 against the township at large.

Prosecutors attack the assessments under four points. They first complain that the costs were not certified imme-

diately and that the assessments were not made within a reasonable time after the completion of the improvement. *Vanderbilt* v. *Belleville,* 11 *N. J. Mis. R.* 775, and *In re Commissioners of Elizabeth,* 49 *N. J. L.* 488, 504, rather broadly indicate that such an argument must find its force in a statutory or charter limitation. Prosecutors assert that our legislature has placed a limitation in sections 14 and 20 of article 20, Municipalities act. *Pamph. L.* 1917, *ch.* 152; 2 *Cum. Supp. Comp. Stat., pp.* 2199, 2200; viz., section 14: "Upon the completion of any local improvement, the board or body in charge shall immediately notify the officer or board that is charged with the duty of making the assessment for benefits \* \* \*;" and section 20: "The officer or board charged with the duty of making assessments for benefits, when notified of the completion of a local improvement, shall examine the said work and view all lands and real estate in the vicinity of said local improvement benefited by such improvement. Said officer or board shall thereupon fix a time and place for the hearing of all persons interested \* \* \*."

We need not consider section 20 because there was not unreasonable delay after the costs were certified to the board of assessors. That leaves the argument dependent upon the provisions of section 14. The insistence is that the word "immediately" here means, not within a reasonable time but, *forthwith, directly, at once,* and that there is no opportunity for judicial construction because the word "shall" imports absolute obligation, strict compliance with which must be had if the municipality is to exercise its delegated power. We do not so interpret the statute. We read a command to notify the assessment officers, and a direction that that be done immediately upon the completion of the improvement. The word "immediately" must gather its meaning from its application. It is not a word of absolute significance. It depends upon the circumstances and events in connection with which it is used. Within the same article of the statute are other and definite expressions of time. We think that it is not consistent to assume that the legislature, having been thus precise in the fixing of time for other purposes, should pro-

ceed to use a word of no definite limitation as the measure of time within which the municipality must certify the cost in order to enforce contribution from properties benefited by the improvement. It is our opinion that the legislature has not put a time limit upon the levying of assessments for benefits and that the court ought not to impose a limit where the legislature has not. *Vanderbilt* v. *Belleville, supra.*

The second point is that prosecutors had neither actual nor constructive notice of the intention to pass the ordinances upon which the assessments are based.

Costs incurred under the first ordinance constitute the vast bulk of the expense of the improvement. By the terms of that ordinance seventy per centum of the cost was to be assessed against the lands benefited subject to the provision that in no case should an assessment exceed the benefit received. Sufficiency of the contents of the notice of intention to pass that ordinance is not questioned, but the period of publication is. The statute (2 *Cum. Supp. Comp. Stat., p.* 2197, §§ 136-2009), required that public notice of the intention of the governing body to consider the ordinance should be given at least one publication in a newspaper circulating in the community at least ten days prior to the date fixed. The notice was in fact published in two appropriate newspapers, namely, the Jersey Journal and the Hudson Dispatch, in the former five days, and in the latter one day, before the meeting. That was not a compliance with the statute and would have been ground for a timely assault upon the validity of the ordinance. *Haake* v. *Norwood,* 99 *N. J. L.* 479, same case, below, 1 *N. J. Mis. R.* 341. Nevertheless the publication did constitute a widely distributed notice that the improvement was under way. The ordinance itself, after passage, was published, July 15th, 1921, in the Hudson Dispatch.

Obviously the improvement was of great benefit to the lots fronting thereon. Quite as obviously the making of the improvement was a fact of notoriety, not only by reason of the newspaper publicity but later because of the nature and extent of the work itself and of the length of time that it occupied. To those who acquired ownership after the improve-

ment was finished, the accomplishment of the improvement, with unsettled questions of assessment, was manifest. The president of Hillside Land Company, a witness for the prosecutors, testified that he knew of the advertisement of the ordinance before the work was begun. Thirty of the prosecutors owned their properties before the passage of the original ordinance. More than twenty of those who later acquired title accepted deeds in which the reservation "subject to assessment whether confirmed or unconfirmed," or equivalent language, was inserted. Yet the record does not disclose the voicing of a single objection to the improvement, in any of its phases, until the hearing in October, 1932, on the assessments. Some of the owners thought that the state, some that the county, could be induced to take over the road and assume the expense, and some, without legal justification (*Schacht* v. *Passaic,* 11 *N. J. Mis. R.* 770), built beliefs upon what men in office told them. But the fact remains that the prosecutors either owned their properties at the inception and with contemporaneous knowledge of the making of the improvement stood by, permitting the municipality, without objection, to proceed through a term of years to the completion of the work, or subsequently took title from those who had such knowledge and manifested such acquiescence. Notice of intention to consider the ordinance is disputed; contemporaneous knowledge of the fact of the improvement and of its character and extent is not.

The principle that an ordinance for an improvement to be paid for by assessment upon benefited properties is a proceeding of a judicial nature upon which the parties affected should have notice and an opportunity to be heard has long been recognized, even when there is no statutory requirement. *State, Vanatta, pros.,* v. *Morristown,* 34 *N. J. L.* 445, 451, and cases cited; *Haake* v. *Norwood, supra* (at *p.* 481). But there is the further principle that where a city has been permitted to go on and incur the expense of an improvement without objection as to the validity of the improvement ordinance and then proceeds to assess the benefits, it is too late for a party thus assessed to object to the assessment on the

ground of the invalidity of the original ordinances. *Durrell* v. *Woodbury*, 74 *N. J. L.* 206. Prosecutors argue that they are not attacking the validity of the ordinance; but they surely are making such an attack, *pro tanto,* in that they deny the validity of that portion of the ordinance that provides for assessing for benefits. Their attack upon the assessments is not other than an attack upon the assessment feature of the ordinance, and the point of attack is that they did not have advance notice of the intention of the governing body to consider the matter.

Prosecutors rely mainly upon *Groel* v. *Newark,* 78 *N. J. L.* 142; *Specht* v. *East Orange,* 8 *N. J. Mis. R.* 647, and *Burstiner* v. *East Orange,* 100 *N. J. L.* 385. The Groel case presented a very different issue both of fact and of law. In the Specht case the protesting taxpayers were denied a writ and the decision is not a holding upon the present point. Burstiner *v.* East Orange is a Court of Errors and Appeals decision and is, of course, so far as it goes, controlling, but it is not adverse to the application in proper instances of *laches* or estoppel in bar of the right of a property owner to question the validity of assessment features of an ordinance. A year later the Supreme Court in a further *certiorari* proceeding between the same parties (*Burstiner* v. *East Orange,* 4 *N. J. Mis. R.* 280), in passing upon the contention that the statutory notice of intention was not given until after the governing body had considered the ordinance on first reading, said:

"We also think that, regardless of the irregularity in the procedure in the enactment of the ordinance, the *certiorari* should be dismissed because of gross laches of the prosecutors, who, having full knowledge of the facts, and knowing the work was going on, allowed the city to expend a considerable sum, which they knew the city, as provided for in its ordinance, expected to assess against properties especially benefited. They waited until they were assured that all benefits to their property would be derived from the improvement, and now seek to escape their proportion of the cost of the work. That they cannot do."

Like expressions are contained in subsequent decisions. *Kalita* v. *Perth Amboy,* 5 *N. J. Mis. R.* 137; *Leavenguth* v. *West Orange,* 6 *Id.* 472, and *Maywood Land Co.* v. *Maywood,* 7 *Id.* 1086.

In *Kalita* v. *Perth Amboy, supra,* the prosecutors sought, *inter alia,* to review the assessments against their property upon the ground that the ordinance was passed upon its first reading before notice of intention to consider was published. The fault there alleged was a violation of the precise section of the statute upon which prosecutors in the instant case rely. The court said that the omission was "in violation of section 9 (*Pamph. L.* 1918, *p.* 484), as construed in *Haake* v. *Norwood,* 99 *N. J. L.* 479, and would be fatal unless laches can be considered. The prosecutors are guilty of the grossest laches. The ordinance was adopted September 5th, 1922, and work upon the improvement commenced soon thereafter. The assessments were confirmed February 8th, 1926, and this rule applied for February 9th, 1926, and allowed March 10th, 1926. During all this period of years prosecutors stood by, allowed the work to proceed, and permitted the expenditure of public funds to be made without making an effort to test the validity of the ordinance, or the proceedings of the city authorities, until the improvement was completed and assessments against their lands made and confirmed. In *Haake* v. *Norwood, supra,* the question of laches was not considered because the writ of *certiorari* was applied for and allowed before the contract for the improvement was entered into."

In *Pico* v. *North Arlington,* 7 *N. J. Mis. R.* 22, the language of *McKevitt* v. *Hoboken,* 45 *N. J. L.* 483, is quoted as follows:

"A person whose rights were affected by the act of the common council under this provision could not remain quiescent until a large sum of money had been expended by color of it, and then invoke the aid of the law to throw the burden upon the entire community. The law required diligence, and a party who stands by and sees a work of this character in the course of construction, attended by the incurrence of indebtedness or the expenditure of money, waives his right to

take those objections which, if properly interposed, would have stopped the work and saved the expense."

Another case supporting the same doctrine is *Manufacturers' Land Co.* v. *Camden,* 78 *N. J. L.* 247, 252.

The trend of the cases lead us to the conclusion that owners of property may not, under the circumstances that we have related, silently and supinely watch the city make an extensive improvement for their benefit, either knowing that the costs to the extent of the benefits are to be assessed or, with knowledge that should have put them upon inquiry, refraining from ascertaining the provisions of the authorizing ordinance, and then, when the work is done and benefits are being assessed, be permitted to say that notice of intention was not properly given and that therefore the general body of taxpayers should pay for their enrichment. We find that the prosecutors, either in themselves or through their grantors in whose shoes they stand, are in *laches.*

The third ordinance gave official sanction to the grades shown on existing and identified plans and apparently required no expenditure of funds. · Assessments under the fourth ordinance are set aside for the reason hereinafter given in the discussion of prosecutors' third point. This leaves only the second ordinance, to which much that has been said regarding the first ordinance is applicable. As to it we may add that the timeliness of the notice of intention is not disputed. The contents of the notice are not set out at length in the return but we are not disposed to turn the determination upon an omission that could so easily have been remedied had the need been indicated. The ordinance was in terms for a local improvement upon which assessments were to be levied for benefits.

Thirdly, prosecutors complain of the inclusion of the cost of the improvement authorized by the ordinance of November 24th, 1925. By the terms of the ordinance the costs were to be "assessed in accordance with the laws governing said township." Such wording did not carry notice to a property owner that the work was to be done as a local improvement for which benefits would be assessed. *Burstiner* v. *East*

*Orange, supra.* Inspection of the ordinance itself would have left him uninformed. *Pamph. L.* 1928, *ch.* 244, had not yet been passed. Prosecutors are not chargeable with special assessments for that item.

Finally, it is urged that the assessments are invalid because, as is said, they include the costs of installing mains and service by the Hackensack Water Company and Public Service Electric and Gas Company under an agreement with the respondent which is unconstitutional and in violation of article 1, sections 19 and 20, of the constitution of New Jersey. Perhaps the contracts referred to are unconstitutional; we do not know. They are not before us. The utilities, parties to the contracts, are not parties here. There is no proceeding to set the contracts aside. The costs are certified to be a part of the costs of the improvement made under ordinance authority and they seem to be so. There is no proof that they are not. Prosecutors do not contend that they are not benefited. We find no reason herein for reversal.

The assessments will be set aside for the reason stated under the third point, to the end that the cost of the improvement under the ordinance of November 24th, 1925, may be omitted from the aggregate sum to be raised, and that new assessments be laid accordingly. Costs are allowed the prosecutors.